UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

THERESA BORUSH,
on behalf of M.B.,

                                   Plaintiff,

          v.                                                3:11-CV-953
                                                            (MAD/ATB)

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

                                   Defendant.

_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
JEREMY A. LINDEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**REPORT-RECOMMENDATION**

This matter was referred to me for report and recommendation by the Honorable

Mae D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

I.   **PROCEDURAL HISTORY**

Plaintiff Theresa Borush protectively filed[1] an application for Supplemental

Security Income ("SSI") payments on behalf of her daughter, M.B.,[2] on June 30, 2009,

_____

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  *See* 20 C.F.R. § 404.630. There are various requirements for this written statement.  *Id.*  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.  Plaintiff's actual application in this case is dated July 21, 2009.

[2] Throughout this Report, the child on whose behalf this action was brought will be generally referred to as "the claimant" or by her initials  "M.B."  Theresa Borush, who commenced this action on behalf of her daughter, will generally be referred to as "the plaintiff."

claiming disability since June 15, 2003 due to generalized anxiety disorder, mood

disorder not otherwise specified, attention deficit hyperactivity disorder ("ADHD"), a

leaky heart valve, and Logan's Wolff-Parkinson-White Syndrome.  (Administrative

Transcript ("T.") at 130-133, 147, 151).  Plaintiff's application was initially denied on

December 18, 2009 (T. 57-62), and she made a timely request for a hearing before an

Administrative Law Judge ("ALJ") on January 13, 2010 (T. 83).  The hearing, at

which plaintiff and her husband appeared with claimant, was conducted on January

18, 2011.  (T. 32-55).

In a decision dated April 15, 2011, the ALJ found that M.B. was not disabled.

(T. 14-28).  The ALJ's decision became the final decision of the Commissioner when

the Appeals Council denied plaintiff's request for review on June 21, 2011.  (T. 4-6).

## II.    ISSUES IN CONTENTION

The plaintiff makes the following arguments:

1.    The ALJ failed to obtain opinions from Nurse Hooper and Social Worker
      Bright-Berhannan.

2.    The ALJ failed to weigh the opinions of claimant's fourth grade teachers
      and obtain opinions from her later teachers.

3.    The ALJ's credibility assessment is not supported by substantial
      evidence.

4.    The ALJ's determination that claimant's impairments were not
      functionally equivalent to the listings was unsupported by substantial
      evidence, and is the product of legal error.

(Pltf.'s Brf. at 1, Dkt. No. 12).

2

This court concludes that the ALJ made reasonable efforts to develop the record with opinion and other evidence from relevant sources, and finds that the record was adequate and sufficient for the ALJ to make his disability determination. This court also finds that the ALJ applied the appropriate legal standards in deciding that M.B.'s impairments were not functionally equivalent to a listed impairment, and that the ALJ's decision was supported by substantial evidence, except in one respect, which constituted harmless error. Finally, this court concludes that the ALJ's assessment of the credibility of the statements of M.B.'s parents about the intensity and limiting effect of their daughter's symptoms was also supported by substantial evidence.

## III.   FACTUAL OVERVIEW

The court will only briefly summarize the medical, educational, and other evidence, which is discussed at length in the ALJ's decision (T. 19-27), the plaintiff's brief (at 2-9), and defendant's brief (at 8-13, Dkt. No. 14). Relevant details of the medical and educational evidence and the testimony of the claimant and her parents are discussed at length below in the course of analyzing the issues disputed by the parties.

The female claimant was born in March 1999. (T. 202). In the summer and fall of 2003, while a preschooler, M.B. underwent extensive screening and testing by the Johnson City, New York School District. (T. 202-216). While that process identified some low average developmental performance and mild delays in language skills, the

school district determined that M.B. required no special services.  (T. 196, 199, 208, 210, 215).

In November 2008, while in fourth grade, M.B. was evaluated by licensed Social Worker, Peggy Bright-Berhannan, who diagnosed claimant with, *inter alia*, ADHD, oppositional defiant disorder, and generalized anxiety disorder.  (T. 236-240). Thereafter, M.B. began counseling and psychiatric medication, including Clonidine, Citalopram, and Focalin.  (T. 252-62, T. 273-82).  In late February 2009, M.B.'s fourth grade teachers wrote the plaintiff, complaining of M.B.'s troubles staying on task and her difficulty with peer relations.  (T. 251).  Kay Hooper, APRN, adjusted claimant's medications (T. 270), and M.B.'s concentration/focus and social behaviors improved over the following months.  (T. 241-250, 264-269, 271).

Plaintiff submitted the application for SSI benefits for M.B. in late June 2009. In October 2009, consultative psychiatrist Dennis M. Noia, Ph. D. examined and issued a report about M.B., who was then ten years old.  (T. 289-92).  Dr. Noia concluded that claimant's manner of relating, social skills, and overall presentation were age appropriate; that her attention and concentration were intact; that she was apparently able to complete age-appropriate tasks; that she was capable of responding appropriately to changes in the environment; that she asked questions and requested assistance in an age-appropriate manner; and that she could learn at her level of cognitive functioning.  (T. 291-92).  However, Dr. Noia also noted that M.B. at times

had problems maintaining appropriate social behavior and difficulty interacting adequately with peers and adults.  (T. 292).

In December 2009, state agency pediatric consultant J. Randall, M.D., reviewed the available medical evidence and concluded that the claimant had less than marked limitations in acquiring and using information and interacting and relating to others, but no limitations in attending and completing tasks, moving about and manipulating objects, and caring for herself .  (T. 293-98).  Although the ALJ provided the plaintiff with an opportunity to provide further medical evidence, no formal opinions from claimant's treating physician, nurse, or social worker were submitted.

In January 2010, Social Worker Bright-Berhannan wrote the Johnson City School District "at the request of the . . . custodial parents regarding an evaluation and recommendations for services in school."  (T. 184-85).  Thereafter, School Psychologist Timothy Kane examined M.B. and prepared a Psychological Report dated March 3, 2012.  (T. 186-92).  The report concluded that claimant's ADHD and oppositional defiance disorder ("ODD") did not impact her learning and achievement in school, although she, at times had difficulty with attention and focus.  (T. 186, 189).  The school psychologist also noted that while M.B. was able to make and maintain friends, she, at times, had difficulty with fluctuating moods and conflict with her peers.  (T. 186, 187, 189).  Based on the report and teacher input, the school district's Committee on Special Education concluded that, despite inconsistent behaviors,

M.B.'s ADHD and ODD did not significantly impact her ability to perform in school, and she did not require special education services.  (T. 182-83).

Nurse Hooper and Social Worker Bright-Berhannan continued to treat claimant through the time the ALJ issued his decision in April 2011.  As discussed below, they periodically addressed issues and problems involving claimant's social behavior, her focus and concentration, her sleep patterns, and a substantial weight gain apparently related to her medication.  But, as documented in defendant's brief (at 10-11), claimant's primary mental health care providers also documented that, over a period of several years of treatment, M.B. displayed, with a few exceptions, normal attention and concentration with medication, fair-to-good judgment and insight, fair-to-good impulse control, good mood with congruent affect, full orientation, normal recent and remote memory, normal thought processes, no suicidal/homicidal ideation, no thoughts of self-injury, no risk/safety issues, normal speech and expressive and receptive language skills, and relaxed motor activity.

In January 2011, the claimant (then age 11) and both her parents testified at the administrative hearing.  The claimant talked briefly about her experience in middle school, and named three friends at the school.  (T. 37-38).  M.B. said that she liked to play softball, but did not have other hobbies or activities.  (T. 38).  The plaintiff testified that her daughter was failing two classes in school; could not focus enough to do homework; and did not ask for academic help.  (T. 41, 48).  The plaintiff told the

ALJ that M.B. had no friends to play with outside of school (T. 42, 44-45, 48-49); that she did not get along with family members because she was extremely argumentative (T. 45-46, 50); and that she was emotional, uncooperative, and thought that rules were meant for other people (T. 47).  The claimant's father testified that, although she was sometimes a little defiant, M.B.'s behavior was good.  He stated, however, that M.B. had no friends because she was obsessive about them and bugged them.  (T. 54).

## IV.   APPLICABLE LAW

### A.   Disability Standard[3]

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of

---

[3] This statement of the relevant disability standard is closely based on the opinion of Magistrate Judge Bianchini in *Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009).

disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y.2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then both statutorily and by regulation, the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires examination of whether the child suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the child if found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1.  *Id*.  Equivalence to a listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment.  Analysis of functionality is informed by considering how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when

several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated*

*Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.  While the ALJ

cannot pick and choose only evidence that supports his finding, *Twyne v. Barnhart*,

No. 01 Civ. 2264, 2003 WL 22299198, at *12 (S.D.N.Y. Oct. 7, 2003), conflicts in the

evidence are for the ALJ to resolve.  *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir.

2008).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the

decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a

reviewing court may not substitute its interpretation of the administrative record for

that of the Commissioner, if the record contains substantial support for the ALJ's

decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## V.    THE ALJ'S DECISION

The ALJ confirmed that the claimant, born in 1999, was a school-age child on

the date of the SSI application on June 30, 2009 and was an adolescent at the time the

ALJ issued his decision.  (T. 17).  The ALJ found that M.B. had not engaged in

substantial gainful activity at any time relevant to the administrative decision.  (T. 17).

The ALJ determined that the claimant suffered from a number of "severe" impairments: ADHD, oppositional defiant disorder, generalized anxiety disorder, obsessive-compulsive disorder, and mood disorder NOS (not otherwise specified).  (T. 17).  However, the ALJ found that the claimant did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 17-18).  The ALJ further determined that M.B. did not have any impairment that functionally equaled the listings; the claimant was found to have a less than marked limitation in attending and completing tasks and no limitation in the other five relevant childhood "domains." (T. 19-27).  The ALJ stated that, to the extent the statements of claimant's parents about her limitations were inconsistent with his findings, they were not fully credible. T. 18-19, 27).   Accordingly, the ALJ concluded that M.B. had not been disabled since June 30, 2009, the date the application was filed.  (T. 28).

## VI.   ANALYSIS

The ALJ's finding that M.B. had not engaged in substantial gainful activity at any time relevant to the disability determination is not disputed.  There is no apparent challenge to the determination that the claimant had the "severe" impairments identified by the ALJ or that M.B. did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff argues that the ALJ failed to adequately

develop the administrative record and erred when he found that M.B.'s impairments were not functionally equivalent to a listed impairment.  Plaintiff also asserts that the ALJ's credibility finding regarding the statements of claimant's parents about the intensity, persistence, and limiting effects of their daughter's symptoms was not supported by substantial evidence.  For the reasons set forth below, this court concludes the plaintiff's contentions are unpersuasive and recommends that the District Court uphold the determination of the ALJ that M.B. was not disabled.

### A.    The ALJ's Development of the Record

Plaintiff contends that, in analyzing whether M.B.'s impairments were functionally equivalent to a listed impairment, the ALJ should have recontacted claimant's treating nurse and social worker to obtain opinions (Pltf.'s Brf. at 11-13), and should have also obtained opinions from M.B.'s fifth and sixth grade teachers (Pltf.'s Brf. at 13-15).  In this case, the ALJ made reasonable efforts to obtain evidence from treating sources and claimant's school, and the record was adequate to make his disability determination, without formal opinions from the M.B.'s nurse, social worker, or later teachers.

### 1.    Medical Sources

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete.  *Tejada v.*

*Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.").  In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination.  20 C.F.R. § 416.912(e).[4] Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79, n. 5 (2d Cir. 1999).

Nurses and social workers are not "acceptable medical sources" under Social Security rules.  While their opinions do not command the same weight as that of a treating physician, they are entitled to "some consideration."  *Marziliano v. Sullivan*, 771 F. Supp. 69, 75 (S.D.N.Y. 1991); SSR 06-03p, 2006 WL 2329939, at *2, 3 (Aug. 9, 2006) (opinions from other sources, such as social workers and nurses, who are not technically deemed "acceptable medical sources[,]" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with

---

[4] Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 416.912 to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances.  I applied the version of § 416.912(e) in effect when the ALJ adjudicated M.B.'s disability claim, pursuant to *Lowry v. Astrue*, 11-1515-cv, 2012 WL 1142308, at *2 n.2 (2d Cir. Apr. 6, 2012) .

the other relevant evidence in the file").  Although an ALJ must make reasonable efforts to obtain a medical source statement, at least from a treating physician,[5] the lack of such a formal opinion will not necessarily make the record incomplete. *Streeter v. Comm'r of Soc. Sec.*, No. 07-CV-858 (FJS), 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) (citing, *inter alia*, 20 C.F.R. §§ 416.913(b)(6)).

The Social Security Administration requested that the practice group, which included Nurse Hooper and  Social Worker Bright-Berhannan, submit a medical source statement.  The statement was returned, dated August 28, 2009, and signed by Nurse Hooper and psychiatrist Michael Lavin, M.D.; but the opinion form was not filled out.  (T. 228-235).  Before the hearing, treating Nurse Kathryn Hooper and treating Social Worker Peggy Bright-Berhannan, did, however, submit their complete records of treatment of claimant from November 2008 to August 2009.  (T. 35; Ex. 2F, T. 228-82).  At the January 18, 2011 hearing, claimant's attorney requested an opportunity to submit further records and was granted 30 days, and then a brief extension.  (T. 36, 54-55, 181).  Among other things, claimant's counsel submitted Nurse Hooper and Social Worker Bright-Berhannan's complete treatment records for the period from January 2010 to March 2011, but not a completed medical source

---

[5] The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations.  *F.S. v. Astrue*, 1:10–CV–444 (MAD), 2012 WL 514944, at *6 (N.D.N.Y. Feb. 15, 2012) (collecting cases).  As noted, the nurse and social worker who saw the claimant were not treating **physicians**.

statement.  (T. 218; Ex. 10F, T. 309-61).

To develop the medical record, the Social Security Administration, *inter alia*, scheduled psychiatric and physical consultative examinations[6] for the claimant and obtained an opinion on M.B.'s functioning from state agency medical consultant J. Randall, M.D.  (T. 285-300).  As discussed further below, the ALJ also considered a report of a school psychologist, who observed the claimant, and other educational records.  (T. 19, 182-217).  Several times, the ALJ's opinion referenced the treatment records of Nurse Hooper and Social Worker Bright-Berhannan (Exs. 2F & 10F), demonstrating that the ALJ considered their medical observations, even in the absence of a formal opinion.  (T. 18, 22, 24, 25, 27).

The court concludes that the ALJ made reasonable efforts to develop the medical record in this case, and that the claimant was provided with ample opportunities to supplement the record with any information that her attorney believed was necessary and appropriate.[7]  The ALJ did not err by failing to recontact Nurse

---

[6] M.B. attended her psychiatric consultative examination in October 2009 (T. 289-92), but failed to attend her physical consultative examination, even though it was scheduled multiple times (T. 134, 298-300).

[7] Ultimately, the claimant has the burden of proof and  is responsible for "furnish[ing] such medical and other evidence of the existence" of disability.  42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. §§ 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"), 416.912(c)("[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is"). As stated by the Supreme Court, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987)

Hooper and Social Worker Bright-Berhannan to again request a formal medical source opinion.  As documented below, the ALJ had substantial evidence supporting his finding that the claimant was not disabled, and there were no clear gaps in the medical evidence.  *See, e.g.*, *Frye ex rel. A.O. v. Astrue*, 11–1585–cv, 2012 WL 2125910, at *3 n.2 (2d Cir. June 13, 2012) (the ALJ who relied on state agency psychiatrist–the only expert of record who specifically assessed whether minor claimant's impairments met or equaled a listing–and who provided claimant's counsel with adequate opportunity to supplement the record, based his decision "on a fully developed record"); *Lowry v. Astrue*, 11-1515-cv, 2012 WL 1142308, at *2 (2d Cir. Apr. 6, 2012) (the ALJ satisfied his duty to develop the record by obtaining the minor claimant's complete medical history; he did not need to recontact a treating physician for further opinion evidence about whether claimant's condition met or medically equaled a listed impairment); *Streeter v. Comm'r of Social Sec.*, 2011 WL 1576959, at *3 (the ALJ met his duty to ensure that he had a complete medical record where he made a reasonable, albeit unsuccessful effort to obtain the treating physician's report and made his disability determination on  sufficient and consistent evidence).

### 2.    Educational Sources

The plaintiff also claims that the ALJ did not develop an adequate record in this case by failing to obtain opinion evidence from claimant's fifth and sixth grade teachers.  By the time of the hearing, it appears the only direct evidence from

claimant's school was a notification that claimant was not receiving special education services (T. 158) and a February 26, 2009 letter home from claimant's fourth grade teachers (T. 251).[8]  At the conclusion of the hearing, the ALJ provided claimant with an opportunity to submit additional evidence and specifically suggested that claimant's counsel submit a questionnaire either from a school psychologist or a teacher.  (T. 52).  Claimant eventually submitted extensive educational records from claimant's school, but did not include a questionnaire from any of claimant's more recent teachers.  (T. 182-217).

The law discussed above with respect to evidence and opinions from sources other than "acceptable medical sources" would also apply to "educational personnel." *See, e.g.*, SSR 06-03p, 2006 WL 2329939, at *2.[9]  Based on that authority, the court concludes that the ALJ made reasonable efforts to ensure that the educational evidence of record in this case was complete, and provided claimant's counsel with ample opportunity to provide, *e.g.*, questionnaires from teachers.  The educational information of record when the ALJ wrote his decision, included an extensive, March 2010, report from a school psychologist, which included input from claimant's fifth grade teachers.  (T. 186-92).  The ALJ also had the March 2010 minutes of the Special

---

[8] I will address, below, plaintiff's argument that the ALJ did not properly consider the written comments of claimant's fourth grade teachers and other educational evidence.

[9] *See also* 20 C.F.R. § 416.913(d)(2) (ALJ may use evidence from educational personnel, *e.g.*, teachers and counselors, to determine the severity of a claimant's impairments and how they affect his/her ability to function).

Education Committee, which, again with teacher input, explained why the Committee concluded that the claimant would not be classified as "a student with a disability" and did not require special education services.  (T. 182-83)  As discussed below, the ALJ's finding that the claimant was not disabled was supported by substantial evidence, and there were no clear gaps in the educational evidence.  Accordingly, the court finds that the ALJ did not err by not taking further steps to solicit supplemental educational evidence.

### B.   Functional Domains

As discussed above, if the claimant's condition does not meet or medically equal a specifically listed impairment, the ALJ must determine whether claimant has an impairment or combination of impairments that functionally equals a listing.  The functional equivalence determination is based upon an analysis of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Plaintiff argues that the ALJ committed legal error in conducting his functional equivalence analysis by not soliciting opinion evidence from claimant's nurse, social worker, and more recent teachers.  As discussed above, the court finds that the ALJ did not err by failing to recontact those sources for opinion evidence and made his disability determination based on a complete record.

The ALJ decided that M.B. had a less than marked limitation in attending and completing tasks and no limitation in the other five domains.  The plaintiff argues that, when all of the relevant evidence in the record is properly considered, the ALJ's findings were not supported by substantial evidence.  In particular, plaintiff contends that the claimant had at least marked limitations in three domains–attending and completing tasks, interacting and relating to others, and caring for herself.  (Pltf.'s Brf. at 19-25).[10]  For the reasons set forth below, there is substantial evidence in the record to support the ALJ's functional analysis findings, with one exception that constitutes harmless error.

### 1.    Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).  With regard to this domain, a school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.  The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments).  The child should be able to change

---

[10] In any event, the ALJ's finding of no limitations with respect to the other three domains was supported by substantial evidence, as his opinion documents.  (T. 20-21, 24-27).

activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate.  The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.  20 C.F.R. § 416.926a (h)(2)(iv).

An adolescent child should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects.  An adolescent should also be able to organize materials and plan his/her time in order to complete school tasks and assignments.  In anticipation of entering the workplace, adolescents should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting.  20 C.F.R. § 416.926a(h)(2)(v).

The regulations list examples of limited functioning for this domain, including: (i) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (ii) "being slow to focus on, or fail to complete activities of interest"; (iii) becoming repeatedly sidetracked from activities or frequently interrupting others; (iv) being easily frustrated and giving up on tasks; and (v) requiring extra supervision to maintain engagement in an activity.  20 C.F.R. § 416.926a(h)(3)(i)-(v).  The

applicability of the examples depend on the claimant's age and "do not necessarily described a 'marked' or 'extreme' limitation."  20 C.F.R. § 416.926a(h)(3).

The ALJ found that M.B. had a less than marked limitation in the domain of attending and completing tasks; the plaintiff contends that the ALJ should have found at least a marked limitation in this domain.  The ALJ noted that the plaintiff testified, in January 2011, that M.B. could not focus enough to complete her homework and tended not to finish tasks because she lost interest.  (T. 22; T. 41, 48).  However, the ALJ gave "substantial weight" to the March 2010 report of a school psychologist, who after evaluating claimant twice, concluded that her attention and concentration were age appropriate, albeit in the low-average range.  The psychologist also reported that claimant put forth adequate effort in her work, although she terminated tasks without effort when they became too difficult.  (T. 19, 22; T. 187-88).  The ALJ also noted the March 2010 observations of the Committee on Special Education at claimant's school, that M.B. at times would get frustrated and stop working, but would get back to work if left alone.  (T. 22; T. 183).  The Committee determined that claimant's diagnosis did not significantly impact her ability to perform in school and that she did not require special education services.  (T. 183).

Plaintiff argues that the ALJ did not properly consider the concerns expressed by claimant's fourth grade teachers, in February 2009, that M.B. was "having trouble staying on task for any amount of time," that "[s]hutting down and quiet defiance had

become everyday occurrences," and that claimant's "[o]rganization has diminished" and that she is demonstrating "a [sic] overall lack of 4th grade student responsibility." (Pltf.'s Brf. at 19; T. 251).  However, an ALJ is not required to explicitly set forth and analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  Moreover, as the Commissioner documents in his brief (at 12-13), claimant's treating nurse, upon receiving a copy of the teachers' letter and confirming that M.B.'s attention was "distractable" and her concentration "brief," adjusted her medication in late February 2009.  (T. 272).  Subsequent reports from Nurse Hooper and Social Worker Bright-Berhannan, through claimant's successful completion of fourth grade, documented that the change in medications significantly improved claimant's concentration, attention, and ability to complete tasks.  (T. 250, 264-68, 270-71).  Moreover, both the school psychologist's report and the minutes of the Committee on Special Education reflected more timely,[11] and more positive

---

[11] The ALJ had to determine whether claimant was disabled starting on June 30, 2009, the effective date of her SSI application.  The letter from claimant's fourth grade teachers was written several months before the relevant time period, but the reports of the school psychologist and Committee on Special Education were issued in March 2010, during the time period for which the ALJ was assessing whether claimant was disabled.

The plaintiff also argues that the ALJ failed to address the 2003 educational reports of Social Worker Murphy-Windingland and the school psychologist, Dr. Gage.  (Pltf.'s Brf. at 25; T. 206-212).  These reports were issued when M.B. was a preschooler and was not on any ADHD medication.  (T. 211, 215).  As the defendant's brief argues (at 11-12), these reports do not set forth any medical or other findings that are particularly probative of whether claimant was disabled starting in June 2009, and the ALJ did not err by not referring to them.

teacher input regarding claimant's ability to concentrate and complete tasks.  (T. 183, 186-87).

The ALJ credited the October 2009 findings of Dr. Noia, the consultative psychiatrist who examined and tested claimant, that her attention and concentration were intact.  (T. 22; T. 291, 292).[12]  The ALJ also noted that the claimant's mental health provider observed that claimant's attention and concentration were normal during the day when her medication was in effect.  (T. 22; T. 310, 333, 334, 336).[13] Plaintiff suggests that the ALJ failed to account for periodic problems with claimant's attention and concentration noted by Nurse Hooper and Social Worker Bright-Berhannan in early 2009 and early 2010.  (Pltf.'s Brf. at 19-20).  However, as documented in defendant's brief (at 14-15), Nurse Hooper noted that M.B. had normal

---

[12] The ALJ found no support in the record for Dr. Noia's statement that, "regarding the daily functioning of the claimant, she **reportedly** has difficulty at times attending to, but cannot follow and understand most age appropriate direction."  (T. 19-20; T. 292 (emphasis added)). Assuming the ALJ correctly interpreted the quoted statement, which is difficult to understand as written, he reasonably afforded no weight to the suggestion that M.B. could not follow age-appropriate directions, because they were not supported by Dr. Noia's examination findings and were not consistent with the record as a whole.  (T. 19-20).  20 C.F.R. §§ 416.927(c)(3) (a medical source opinion that is well-supported by medical signs and laboratory findings is entitled to more weight than one that is unsupported); 416.927(c)(4) (generally, the more consistent an opinion is with the record as a whole, the more weight it will be given).  Dr. Noia's finding that the claimant's attention and concentration were intact was supported by the results of testing her ability to do counting, simple calculations, and serial 3s.  (T. 291).  Dr. Noia also found that the claimant "appears to be able to complete age appropriate tasks" and "gave the impression that she is capable of responding appropriately to changes in the environment . . . and asking questions and requesting assistance in an age appropriate manner."  (T. 292).

[13] Although claimant's medications were periodically adjusted to try to ensure they remained effective during the entire school day, there were no issues with M.B.'s compliance with her medication regimen.

24

concentration and attention when on her medication during the vast majority of

claimant's office visits between December 2008 and March 2011.

Dr. Randall, the state agency reviewing pediatrician, concluded that claimant

had no limitation with respect to attending and completing tasks.  (T. 22; T. 295).  The

ALJ found that, given the claimant's performance at school and medication

management for her ADHD, M.B. had a less than marked limitation in this domain.

(T. 22).  A marked limitation "interferes seriously" with one's ability to initiate,

sustain, or complete activities, and corresponds to results on standardized testing of at

least two standard deviations below the mean.  20 C.F.R. § 416.926a(e)(2).  Even if

claimant's performance at school with respect to attending and completing tasks was

"low average" and the success in treating her lack of focus and concentration with

medication varied somewhat over time, the ALJ's conclusion that claimant's

limitation in this domain was less than marked is supported by substantial medical and

educational evidence.  *See, e.g., cite Frye ex rel. A.O. v. Astrue*, 5:10–CV–98

(GTS/ATB), 2010 WL 6426346, at *10-12 (N.D.N.Y. Nov. 12, 2010) (the ALJ's

finding that the school-aged claimant, diagnosed with ADHD, had a less than marked

limitation with respect to attending and completing tasks was supported by substantial

evidence, notwithstanding the "seemingly mixed" medical and educational evidence

regarding the extent of his limitations), (Report-Recommendation), *adopted*, 2011 WL

1301538, at *4-5 (N.D.N.Y. Mar. 31, 2011) (despite the significant evidence of

claimant's inattention and hyperactivity, there was substantial evidence supporting the ALJ's finding that the claimant did not have "marked" limitations in those areas), *aff'd*, 11–1585–cv, 2012 WL 2125910, at *3 (2d Cir. June 13, 2012)*; Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *8-9 (N.D.N.Y. Apr. 30, 2009) (upholding the ALJ's finding that claimant's limitations in attending and completing tasks were less than marked, despite observations about some "serious" problems in related areas by teachers, because the finding was supported by substantial evidence, including the opinion of the treating psychiatrist that claimant's attention span was "fine" on the current medication); *Lanzo ex rel. J.I.C. v. Astrue*, 10–CV–271S, 2012 WL 838921, at *4 (W.D.N.Y. Mar. 12, 2012) (although this court agrees that the minor claimant does have a problem with respect to attending and completing tasks, the ALJ's determination that this problem did not rise to the level of a marked limitation is supported by substantial evidence, including the fact that it did not inhibit claimant in performing adequately in school).

## 2.    Interacting with and Relating to Others

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  Under the Regulations, a school-age child is expected to develop lasting friendships with

children his or her age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and to tolerate differences. A school-age child "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

An adolescent should be able to initiate and develop friendships with children of comparable age and to relate appropriately to other children and adults, both individually and in groups. An adolescent should begin to be able to solve conflicts with peers, family members, other adults. He or she should recognize that there are different social rules for friends and for acquaintances or adults. Adolescents should also be able to intelligibly express feelings, ask for assistance in getting needs met, seek information, describe events, and tell stories, in all kinds of environments, and with all types of people. 20 C.F.R. 416.926a(i)(2)(v).

The Regulations provide examples of limited functioning with respect to this domain for various age groups. For example, a child might have limited functioning if he or she has no close friends, avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people or trying new experiences. Other examples of possible limitations in this domain include: difficulty playing games or sports with rules, difficulty communicating with others or in asking others for assistance, or difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. §

27

416.926a(i)(3).

In assessing the claimant's ability to interact and relate to others, the ALJ noted that plaintiff testified, in January 2011, that her daughter had no friends, had no one to play with, and did not get along with her older siblings or parents.  (T. 23; T. 42, 44-46, 48-49).  Plaintiff further testified that M.B. had problems with a bully at school[14] and that the girls on her softball team do not like her.[15]  (T. 23; T. 41-43, 46-47).  M.B.'s mother also told the ALJ that the claimant refuses to do what she is told by her parents and cries and becomes emotional when criticized.  (T. 23; 47, 50).  The ALJ observed, however, that claimant testified that she currently had three friends at school and enjoyed playing on the softball team.  (T. 23; T. 38-39).  Claimant's father testified that claimant's behavior was good, except that she sometimes becomes defiant, and that she had no friends because she obsessively "bugs" them.  (T. 23; T. 54).  In March 2011, claimant's father advised a nurse that, although she still frequently had argumentative moods, she seemed to be gaining some maturity.  (T. 24; T. 309-10).  As discussed further below, the ALJ found the plaintiff's statements about the intensity, persistence, and limiting effect of the claimant's symptoms not fully credible.  (T. 18-19, 27).  *See Lanzo ex rel. J.I.C. v. Astrue*, 2012 WL 838921, at

---

[14] The ALJ noted that M.B. told her treating nurse that the bullying problem has stopped by March 2010.  (T. 24; T. 309).

[15] The claimant's interaction with her teammates apparently improved by June 30, 2009, when M.B. told her social worker than she was awarded a certificate from her softball team  for "most improved attitude" and "great teamwork."  (T. 242-43).

*5 (factoring in the ALJ's finding that the plaintiff's testimony about her child's ability to interact with and relate to others was not credible in assessing whether substantial evidence supported the ALJ's conclusion that the claimant's limitation in this domain was not marked).

The ALJ considered the October 2009 report of consultative psychiatrist, Dr. Dennis Noia, whose "Mental Status Examination" included the finding that M.B.'s demeanor was cooperative and her manner of relating, social skills, and overall presentation were age-appropriate.  (T. 23; T. 290).[16]  The ALJ credited the observations of School Psychologist Timothy Kane that M.B. was friendly and cooperative.  Although the school psychologist reported that M.B. was a very social girl who could make and maintain friends easily, she sometimes had conflicts with and was short-tempered with peers.  (T. 23-24; T. 187, 189).

The ALJ emphasized that, according to her mental health provider, the claimant engaged in a wide variety of positive social activities involving peers and family throughout 2010.  (T. 24; T. 315, 320, 322, 325, 333, 341-42, 346, 349).  Plaintiff argues that the ALJ failed to account for considerable evidence from claimant's nurse

---

[16] The ALJ found no support in the record for the arguably inconsistent statements of Dr. Noia that the claimant "**reportedly** has difficulty at times adequately maintaining appropriate social behavior" and "has difficulty getting along with friends and family."  (T. 19-20; T. 291-92 (emphasis added)).  As noted above, while the ALJ cannot pick and choose only evidence that supports his finding, conflicts in the evidence are for the ALJ to resolve.  In any event, as discussed below, if Dr. Noia's overall findings, along with other evidence, indicated that claimant had some limitations with respect to interacting and relating to others, the ALJ's contrary conclusion would be harmless error.

and social worker that she was periodically involved in conflicts with family and peers, and was, at times, irritable, argumentative, and defiant.  (Pltf.'s Brief at 20-22). Many of the reports of  Nurse Hooper and Social Worker Bright-Berhannan about claimant's social and behavioral issues related to the time period in late February 2009 when M.B.'s fourth grade teachers complained to plaintiff, *inter alia*, about claimant's negative peer relations.  (T. 251).  As discussed above, claimant's nurse adjusted her medications in February 2009 (T. 272) and, by early May 2009, the claimant's behavior and relationship issues improved significantly.  (T. 241-43, 244-45, 264-65). As defendant's brief documents (at 17-18), claimant had another short spell of more serious behavioral issues in September 2010, when claimant's medications were changed to address her weight gain, but, by October 2010, her medications again improved M.B.'s mood and emotional control.  (T. 324, 334, 336, 345, 352-55).

As the ALJ noted, Dr. Randall, the State Agency review pediatrician, determined that the claimant had a less than marked limitation on functioning with respect to interacting and relating to others.  (T. 24; T. 295).  Dr. Randall accurately noted that M.B. had a history of being irritable, argumentative, oppositional, and emotional, although M.B.'s behavior had improved with medication.  (T. 295). Nonetheless, the ALJ found that M.B. had **no** limitation in this domain, given her "ability to maintain appropriate social behavior while in public."  (T. 24).

The court concludes that the ALJ's failure to adopt Dr. Randall's finding of a

less than marked limitation with respect to interacting and relating to others is not

supported by substantial evidence.  While there is substantial evidence that M.B.'s

social behavior improved when her medications were adjusted and as she matured, she

had a history of significant problems in this area, as the various medical and

educational sources reported.  The ALJ's determination that the claimant had a severe

impairment of oppositional defiant disorder (T. 17) contradicts his finding of **no**

limitation in this domain.  *See, e.g., F.S. v. Astrue*, 2012 WL 514944, at *18 (while the

record may not support a finding of marked limitations in interacting and relating to

others, the court finds that, due to the diagnosis of oppositional defiance disorder,

substantial evidence does not support the ALJ's decision that the minor claimant has

no limitation in this domain).  Similarly, Social Worker Bright-Berhannan's finding

that claimant had a GAF score of 50[17] in November 2008 and January 2010 (T. 184,

240), also seems inconsistent with a finding of **no** limitation in this domain; although,

in light of the other evidence, M.B.'s GAF scores are not indicative of a marked

limitation in interacting and relating to others.  *See, e.g, Armstead ex rel. Villanueva v.

Astrue*, 1:04-CV-503 (NAM/RFT), 2008 WL 4517813, at *21-22 (N.D.N.Y. Sept. 30,

2008) (in light of the other medical and educational evidence of the minor claimant's

---

[17] The Global Assessment of Functioning (GAF) Scale (DSM-IV Axis Victor) ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (American Psychiatric Ass'n 1994) ("DSM") at 32.  A GAF range of 41-50 indicates that the individual has a "serious impairment in one of the following: social, occupational, or school functioning."

progress in interacting and relating to others in a special education setting, there was

substantial evidence to support the ALJ's finding that he had a less than marked

impairment in this domain notwithstanding a diagnosis of ADHD and a GAF score of

45); *Elias ex rel. M.P. v. Astrue*, 07 Civ. 6319, 2011 WL 310323, at *1, 7 (S.D.N.Y.

Jan. 24, 2011) (finding substantial evidence to support an ALJ's finding of a less than

marked impairment in interacting and relating to others for a claimant with an ADHD

diagnosis and a GAF score of 50, in light of treatment records indicating, *inter alia*,

that claimant had adequate socialization skills and an adequate network of friends).

Notwithstanding this court's conclusion that the ALJ erred in finding that

claimant had no limitation in interacting and relating to others, this error would be

harmless.  The harmless error standard has been applied to Social Security actions.

*See, e.g., Lazore v. Astrue*, 443 F. App'x 650, 653 (2d Cir. 2011); *Akey v. Astrue*, 467

F. App'x 15, 17 (2d Cir. 2012).  "[W]here application of the correct legal principles to

the record could lead to only one conclusion, there is no need to require agency

reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  Even if, after

a proper consideration of all the relevant evidence, the ALJ should have concluded

that claimant had a less than marked, or even a marked limitation in this domain, "it

would not have resulted in a finding of disability because the ALJ found no other

marked limitations." *LaRock ex rel. M.K. v. Astrue*, 10–CV–1019 (NAM/VEB), 2011

WL 1882292, at *10 (N.D.N.Y. Apr. 29, 2011) (the ALJ's failure to offer a specific

explanation as to why he rejected the finding of a doctor about the extent of a

limitation, at most amounts to harmless error) (Report and Recommendation),

*adopted*, 2011 WL 1883045 (N.D.N.Y. May 17, 2011) (citing 20 C.F.R. §

416.92[6]a(d) (a child's impairment is of listing-level severity if he/she has "marked"

limitations in two of the domains or an "extreme" limitation in one domain)).

### 3.    Self-Care

In this domain, the Commissioner considers the child's ability to "maintain a

healthy emotional and physical state, including how well he or she gets physical and

emotional wants and needs met in appropriate ways; copes with stress and changes in

environment; and whether the child can take care of his or her own health,

possessions, and living area.  20 C.F.R. § 416.926a(k).  With regard to this domain, a

school-age child is expected to be independent in most day-to-day activities (*e.g.*,

dressing, bathing), although the child may still need to be reminded sometimes to do

these routinely.  The child should begin to recognize that he or she is competent in

doing some activities and has difficulty with others.  The child should begin to

develop understanding of right and wrong, and what is acceptable and unacceptable

behavior.  He or she should begin to demonstrate consistent control over behavior, and

avoid behaviors that are unsafe or otherwise not beneficial.  20 C.F.R. § 416.926a

(k)(2)(iv).

The Regulations provide, that with respect to self-care, an adolescent should

feel more independent of others and be increasingly independent in day-to-day

activities.  Adolescents should notice changes in the development of their bodies and

begin to discover appropriate ways to express related feelings, both good and bad.

Additionally, an adolescent  should begin to think seriously about future plans after

completing school.  20 C.F.R. § 416.926a(k)(2)(v).

The applicable regulations provide examples of limited functioning with respect

to this domain.  For example, a child might have limited functioning if he or she often

uses self-soothing activities showing developmental regression or has restrictive or

stereotyped mannerisms, does not dress or bathe himself age-appropriately, engages in

self-injurious behavior or ignores safety rules, does not spontaneously pursue

enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns.

20 C.F.R. § 416.926a(k)(3).

The ALJ found that claimant had no limitation in the ability to care for herself.

(T. 25-26).  He noted that the claimant's mother did not allege any problems with

respect to this domain.  (T. 26; T. 142, 144).  In fact, at the time plaintiff applied for

SSI benefits on behalf of M.B., she reported that the claimant had no problems

walking, running, or eating, bathing, grooming, or dressing independently.  (T. 142,

144).  The ALJ relied on the finding of Dr. Randall, the State Agency review

pediatrician that claimant had no limitations in the areas relevant to this domain.  (T.

26; T. 296).[18]   The ALJ also credited the findings of Dr. Noia that M.B. was able to

complete age-appropriate tasks, respond appropriately to changes in the environment,

ask questions and request assistance in an age-appropriate manner, and be aware of

dangers and take precautions in an age-appropriate manner.  (T. 19; T. 292).[19]

Plaintiff argues that claimant had a marked impairment in this domain, based in

part on her sleep problems and a few reports that claimant chewed the ends of her

sleeves, hit herself when angry, and made comments about harming herself.  (Pltf.'s

Brf. at 24).  As defendant's brief documents (at 19), most of claimant's significant

sleep problems pre-dated the June 2009 start date of her eligibility period, and Nurse

Hooper's periodic reports after that time indicated, with a few exceptions, that M.B.

was sleeping normally, with the help of medication.  (T. 264, 309, 311, 315, 320, 322,

324, 327, 333-34, 336; exceptions: T. 317, 331).  *See Lanzo ex rel. J.I.C. v. Astrue*,

2012 WL 838921, at *4 (considering the positive effect of medication on claimant's

insomnia in assessing the extent of his limitation in one of the childhood domains).

Similarly, the reports of self-soothing activities or inflicting or threatening self-harm

were isolated incidents which generally pre-dated the eligibility period.  As

---

[18] *See* 20 C.F.R. § 416.927(f)(2) (ALJs must consider the findings of state agency medical consultants and other program physicians because they are highly qualified and are also experts in Social Security disability evaluations); *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) (the opinions of non-examining sources may override treating sources' opinion provided if they are supported by evidence in the record).

[19] Dr. Noia also found that M.B. was able to dress, bathe, and groom herself at an age-appropriate level, with some assistance.  (T. 291).

defendant's brief documents (at 19), Nurse Hooper's treatment notes  consistently indicate that, during the relevant time frame, she found that M.B. had no suicidal ideation, no thoughts of self-injury, and presented no risk/safety issues.

Plaintiff also argues that the ALJ, in assessing claimant's limitations with respect to self-care, failed to consider properly that claimant gained substantial weight and that, in March and June 2010, M.B. was reportedly obsessive in thinking about food and did not care about controlling her eating or watching her weight.  (Pltf.'s Brf. at 24).  However, the ALJ discussed M.B.'s increase in weight and noted the fact that a responsive change in her medication stopped her weight gains.  (T. 27; T. 43-44, 320, 324, 328, 334, 336, 345-48, 352, 355).  Notwithstanding plaintiff's various arguments, there is substantial evidence supporting the ALJ's finding that the claimant has no limitations in the domain of self care.

## C.    The ALJ's Assessment of Claims of Subjective Symptoms

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-

step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 416.929; *see also*

*Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3,

1998).

First, the ALJ must determine, based upon the claimant's objective medical

evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged . . . ."  20 C.F.R. § 416.929(a).  Second, if the

medical evidence alone establishes the existence of such impairments, then the ALJ

need only evaluate the intensity, persistence, and limiting effects of a claimant's

symptoms to determine the extent to which it limits the claimant's capacity to

function.  20 C.F.R. § 416.929(c).  When the objective evidence alone does not

substantiate the intensity, persistence, or limiting effects of the claimant's symptoms,

the ALJ must assess the credibility of the claimant's subjective complaints by

considering the record in light of the following symptom-related factors: (1)

claimant's daily activities; (2) location, duration, frequency, and intensity of

claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage,

effectiveness, and side effects of any medication taken to relieve symptoms; (5) other

treatment received to relieve symptoms; (6) any measures taken by the claimant to

relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms.  20 C.F.R. § 416.929(c)(3).

When the claimant is a child, the ALJ is free to accept or reject the testimony of

the child's parent.  *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir.

1988).  If the child is unable to adequately describe his symptoms, the ALJ may accept

the description provided by the testimony of the person most familiar with the child's

condition, such as a parent.  *Hamedallah ex rel. E.B. v. Astrue*, No. 3:11-CV-939

(MAD), 2012 WL 2403518, at *16 (N.D.N.Y. June 25, 2012) (citing *Jefferson v.

Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003)).[20]  In such cases, the ALJ must make

a specific finding regarding the parent's credibility as if the child were testifying

himself.  *Id*.  A strong indication of credibility of an individual's statements is their

consistency, "both internally and with other information in the case record."  *Id*. at *17

(citing SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996)).

The plaintiff argues that the ALJ failed to evaluate the statements of claimant's

parents using any of the required factors and did not reference specific evidence

supporting his rejection of their testimony.  To the contrary, the ALJ summarized the

appropriate process for evaluating the credibility of the statements regarding

claimant's impairments, and then stated: "**for the reasons stated below**, the

statements concerning the intensity, persistence and limiting effects of claimant's

symptoms are not credible to the extent they are inconsistent with my finding" that the

claimant's impairments did not functionally equal a listing.  (T. 18-19 (emphasis

---

[20] However, the regulations discussing "symptoms"  specifically state that "[y]our
statements (or those of another person) alone,  . . . are not enough to establish that there is a
physical or mental impairment."  20 C.F.R. § 416.928(a).

added).  Thereafter, the ALJ methodically reviewed various statements of claimant's

parents about the extent of M.B.'s symptoms in each of the six childhood domains,

and, as set forth above, juxtaposed other specific evidence in the record, which was

often inconsistent with the plaintiff's testimony.  (T. 21, 22, 23-24, 27).[21]  For

example, the ALJ noted that plaintiff testified that M.B. was failing two classes and

could not focus enough to complete her homework (T. 21; T. 41); but the ALJ then

summarized a variety of contrary evidence that the claimant's academic performance

was consistently satisfactory.  (T. 21; T. 183, 186, 189, 310, 351).[22]

During the course of his analysis, the ALJ considered the appropriate factors

specified in  20 C.F.R. § 416.929(c)(3) including claimant's daily activities (*see e.g.*,

T. 24, 25); the duration and intensity of claimant's symptoms (*see e.g.*, T. 22, 23-24,

---

[21] As discussed above, the claimant's parents testified that M.B. had no friends and the plaintiff testified that her daughter was disliked by the girls on her softball team.  (T. 23; T. 42, 46, 53-54).  The claimant testified, however, that she had three friends at school and liked playing on the softball team.  (T. 23; T. 38).  Claimant's father was somewhat more positive than his wife about M.B.'s social adjustment; he testified that, although M.B. sometimes got a little defiant and obsessively tended to bug her friends, her behavior was "good" and she was otherwise "okay."  (T. 23, 27; T. 54).  As noted by the ALJ and discussed above, the school psychologist and consultative psychiatrist made findings, *e.g.*, that M.B.'s social skills were age appropriate and that she made and maintained friends easily.  (T. 23-24; T. 187, 189, 290).  The ALJ also documented that claimant participated in a wide variety of social activities throughout 2010 including daily attendance at the Boys' and Girls' Club, participation in voluntary summer program at school, involvement with band and chorus at school, step dancing, and softball.  (T. 24; T. 315, 320, 322, 325, 333, 341-42, 346, 349).  When the ALJ asked about the activities that M.B. participated in, plaintiff testified (in early 2011):  "She watches TV.  Generally, she is always bored looking for myself or her father to entertain her."  (T. 45).

[22] The plaintiff did not challenge the ALJ's finding that M.B. had no limitations with respect to acquiring and using information.  As discussed above, the court found that there was substantial evidence supporting the ALJ's finding that the claimant had a less than marked limitation with respect to attending and completing tasks, which indicated that plaintiff's testimony about M.B.'s ability to concentrate and focus on school work was exaggerated.

27); the effectiveness and side effects of the medication taken to relieve symptoms (T. 18, 22, 27); and other treatment received to relieve symptoms, such as mental health counseling (T. 18).  As he completed his review of claimant's limitations with respect to the six domains, the ALJ concludes:

> Because of inconsistent statements, exaggeration, and a lack of support from either the medical evidence of record or the claimant's school records, I have determined that the claimant's subjective complaints of disability are not fully credible.  I find the . . . [plaintiff's] testimony at the hearing, which exaggerated the claimant's problems, is unsupported by the evidence of record."

(T. 27).  The court finds that the ALJ applied the appropriate process in evaluating the subjective statements of claimants's parents and provided specific evidentiary support for his finding that they were not entirely credible.

The plaintiff also argues that the ALJ's credibility determination was not supported by substantial evidence, particularly because his conclusion that the plaintiff exaggerated the extent of M.B.'s interpersonal problems was inconsistent with the records of Nurse Hooper and Social Worker Bright-Berhannan.[23]  As discussed above, while claimant's nurse and social worker periodically documented issues regarding M.B.'s social behaviors, their treatment notes, overall, did not support plaintiff's claim that M.B. had at least a marked limitation in interacting and

---

[23] Plaintiff also argues that the ALJ did not consider all of plaintiff's testimony and misconstrued the testimony of claimant's father.  (Pltf.'s Brf. at 17-18).  As noted above, the ALJ is not required to explicitly reconcile every shred of conflicting evidence in the record.  The court concludes that the ALJ gave full and fair consideration to the testimony of claimant's parents about her daughter's symptoms and limitations.

relating to others.  As referenced in the Factual Overview above, and as thoroughly

documented in defendant's brief (at 21), the treatment notes of Nurse Hooper and

Social Worker Bright-Berhannan do not support the plaintiff's position that M.B. had

at least marked limitations in three of the six childhood domains during the relevant

time period.

      The ALJ was not obligated to accept plaintiff's testimony about her daughter's

subjective symptoms and restrictions without question, and had the discretion to

evaluate credibility in light of the evidence in the record.  *See, e.g., Aponte v.*

*Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (it is

the function of the Commissioner, not the reviewing courts, to resolve evidentiary

conflicts and to appraise the credibility of the witnesses, including the claimant).  A

court must uphold the Commissioner's decision to discount a claimant's complaints of

pain and other subjective complaints if the finding is supported by substantial

evidence.  *Id.*; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive.")

This court concludes, for the reasons discussed above, that the ALJ's credibility

determination was supported by substantial evidence.  *See, e.g.*, *Frye ex rel. A.O. v.*

*Astrue*, 2010 WL 6426346, at *14-15 (finding substantial evidence supporting the

ALJ's finding that the statements of plaintiff about minor claimant's symptoms and

limitations appear overstated and not entirely credible where the ALJ considered the

appropriate symptom-related factors and pointed out significant inconsistencies between plaintiff's testimony and contrary evidence from the medical and educational records); *Lanzo ex rel. J.I.C. v. Astrue*, 2012 WL 838921, at *6 (upholding ALJ's finding that mother exaggerated minor claimant's symptoms and limitations, based on inconsistent evidence in teacher questionnaire and SSA Function Report).

**WHEREFORE**, based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 16, 2012

Hon. Andrew T. Baxter
U.S.  Magistrate Judge